FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

04 OCT 29 PM 3:39

U.S. DISTRICT COURT
N.D. OF ALA.

JAMES LOVE,

    Plaintiff,

v.

CITY OF BIRMINGHAM, a
municipal corporation,

    Defendant.

CIVIL ACTION NO.
03-AR-0816-S

ENTERED
OCT 29 2004

**MEMORANDUM OPINION**

After hearing oral argument for and against the motion for summary judgment of defendant, City of Birmingham ("the City"), the court now understands better than it did after reading the competing briefs, the areas of legitimate dispute between the City and plaintiff, James Love ("Love").

Love, who is black, is presently employed as an attorney in the City's legal department, and was so employed when he filed this suit. He had earlier been terminated after a process initiated by the Mayor, of which Love was notified on May 17, 2002. The reason articulated by the City for Love's termination was that Love had gone beyond any understanding he may have had with the City Attorney to allow him to approach the Jefferson County Personnel Board ("Personnel Board"), about a proposed salary increase for himself and another Assistant City Attorney. According to the City, Love exceeded his authority by negotiating a so-called "settlement agreement and release" with the Personnel Board. In

the purported agreement, with which the City Attorney strongly disagreed after she learned about it, the Personnel Board approved a multi-step salary increase for Love and for Charles Hughes ("Hughes"), Love's fellow Assistant City Attorney, who is white and who was also thereafter fired for the same alleged reason given for firing Love. Both Love and Hughes appealed their firings to the Personnel Board, and after a hearing they obtained reinstatement. The decision of the Personnel Board, whatever its rationale, is not dispositive of any issue before this court. Prior to going informally to the Personnel Board about a salary adjustment (whether behind the City's back or not), Love had had a conversation with the City Attorney in which he expressed his legal opinion that if he, Love, who is black, received a salary increase, Hughes, who is white, would also have to receive the same increase. This was no more than a legitimate conversation between City lawyers, both of whom are charged with the obligation to understand and to observe the federal laws against employment discrimination based on race. The conversation had all of the earmarks of being routine.

On November 14, 2002, 181 days after becoming aware of his impending termination, Love filed a charge with the EEOC claiming retaliation proscribed by Title VII. Love subsequently filed an amended complaint in this court in which he not only invokes Title VII, as to which he has obtained the requisite right-to-sue from

the EEOC, but also 42 U.S.C. §§ 1981 and 1983 as to which he needs no EEOC exhaustion. He does not invoke § 1983 as a vehicle for obtaining relief from the alleged retaliation, but for alleged constitutional violations of his freedom of speech and association. He bases jurisdiction in this court upon the existence of a federal question under 28 U.S.C. § 1331.

Love complains about a lot of things. One thing he **does not complain** of is discrimination based upon his race. Instead, he claims that he was retaliated against by the City for his having voiced support for the right of Hughes, who is white, not to be subjected to discriminatory conduct on account of his being white. Love's complaint is amorphous. It is doubtful that he has stated a complaint that his termination (which he was successful in getting set aside by the Personnel Board) was, itself, an act of retaliation. If Love intended to complain of the City's disciplinary action leading to his temporary departure from the legal department as a discrete act of retaliation, and if his said wobbly claim passes muster as notice pleading, his claim in this regard has been barred by the 180 day limitation period for the filing of a claim with the EEOC, that is, unless he can mount the same claim under § 1981 and circumvent the Title VII EEOC exhaustion requirement.

Unfortunately for Love, § 1981 does not recognize a cause of action for retaliation unless the complaining party is himself the

victim of retaliation arising out of his own protected status, as distinguished from the protected status of someone on whose behalf he advocates. In *Little v. United Technologies*, 103 F. 3d 956, 961 (11th Cir. 1997), the Eleventh Circuit made this concept plain by saying:

> Here, there is no evidence in the record—and Little does not suggest or allege—that the discrimination or retaliation allegedly levelled against him was due to his race; that is, Little does not contend that Carrier discriminated against him because he was white. Both the facts and legal framework of Little's action are grounded solely in the opposition clause of Title VII and are unrelated to the concerns explicitly set forth in the language of § 1981.

This may explain why Love in his complaint, in an effort to stay within the Title VII framework and to give up the § 1981 avenues, describes acts of alleged retaliatory conduct that took place after his termination and reinstatement, namely, (1) assigning him a less prestigious and less well-located office space after the Personnel Board ordered his return, (2) the abbreviated absence of a personal telephone in his office after his return, and (3) work assignments different from the things he had previously handled. This court does not believe that any of these unpleasant experiences constituted an adverse employment action or are arguably related to any protected activities engaged in by Love. There is no direct evidence of an intent to retaliate. What the City Attorney did were clearly exercises of the traditional management prerogatives in a middle-size law firm, which is exactly what the City's legal

4

department, in fact, is. There was nothing to prevent Love from filing a claim of retaliation for his termination within 180 days after he knew about it, whether he was pursuing reinstatement or after he succeeded. The pendency of an administrative proceeding did not toll the 180 day limitation, a limitation that cannot be extended by subsequent innocuous acts that do not themselves constitute adverse employment actions, particularly, without any direct evidence of retaliatory animus.

Any discrete adverse employment actions that took place more than 180 days before the filing of the EEOC charge cannot be pursued, the reason being that mere work unpleasantries that occur after the 180 day bar do not elongate the 180 day period. Even an obvious act of retaliation perpetrated by an employer long after the 180 day period has barred complaints of earlier obviously retaliatory acts do not revive those barred claims, which are relegated to the status of potential evidence in support of the unbarred claims. This is the very reason for the 180 limitations period. The statute of limitations is not like a rubber band that can stretch to an indeterminate length depending upon subsequent unhappy events that remind a plaintiff of earlier unpleasantness.

Love's claim for retaliation under § 1981 fails because § 1981 does not protect against the kind of conduct of which he complains. On the other hand, his claim under Title VII fails because even a poorly pled claim of retaliation based on the termination is barred

by the 180 day limitation, and the subsequent workplace irritations cannot be labeled adverse employment actions and traced to a retaliatory motive.

Love's feeling, no matter how sincere, that he is being persecuted because he went to the Personnel Board and obtained reinstatement, does not substitute for proof of retaliatory motive. This court is not the Personnel Board and will not assume its responsibility.  Even the Personnel Board would not want to be called upon to decide things like whether an attorney must be moved from the second floor to the sixth floor.  The federal courts take on a lot of responsibility, but micro-managing a city's legal department is beyond this court's ability.

Whether proceeding under Title VII or under § 1981, or both, Love has not met his burden of demonstrating that the City's proffered reasons for its allegedly retaliatory acts are pretextual.  To the contrary, the City's articulated reason for the decision to fire Love, and its reasons for its managerial decisions respecting Love after his reinstatement, are both reasonable and logical, and are not countered by any direct evidence of retaliatory animus or punitive intent.

If the City Attorney meant to punish Love for getting the Personnel Board to reverse the Mayor's decision to terminate him, neither Title VII nor § 1981 proscribes such an act of retaliation. There is no federal remedy for all workplace mistreatment or

6

unfairness.  It must be the result of a statutorily proscribed motive.

Love separately complains that the City violated § 1983 by interfering with his federally guaranteed freedoms of speech and association.  Here, he quickly runs into several insurmountable obstacles.  First, a municipality cannot be found liable under § 1983 under a theory of *respondeat superior*.  Liability under § 1983 cannot attach without proof either that the act complained of was performed by a person delegated by the municipality with the responsibility for making the final and binding decision for the City, so as to make the decision-maker the *alter ego* of the City, or that the act complained of was pursuant to a custom or policy of the municipality.  Love has offered no proof upon which he can travel either of these avenues around *Monel*.  Second, the speech and association that Love says were interfered with are not of the kind and character that are matters of public concern.  They, therefore, are not protected by the First Amendment when engaged in by a municipal employee with Love's job description.  In this case, the matters spoken of by Love were personal to him.  They were never in the public domain.  Third, Love's freedoms of speech and association are limited by his relationship to the City as one of its lawyers.  He discharged a specialized and highly sensitive function.  He cannot complain that he was exercising protected speech by talking with his boss on a matter of mutual concern, or

7

by approaching the Personnel Board about his personal salary problem or the problem of a fellow employee "tied at the hip" to him.  In both instances, he was acting both on his own behalf and as an Assistant City Attorney.  These activities are not the stuff of which First Amendment claims are made.

    Love has added counts for alleged violations of the freedoms of speech and association guaranteed him by the Constitution of Alabama.  The court finds several problems with these claims. Although Love did not invoke this court's supplemental jurisdiction over pendent state law claims by referring the court to 28 U.S.C. § 1367, the court will assume that by including state law claims, Love intended to invoke this court's supplemental jurisdiction over pendent state claims.  The first real problem here is that the court finds no Alabama statute or judicial decision that recognizes a cause of action similar to a federal action under § 1983 upon which to sue a municipality for money damages for alleged interference with a state constitutional right, and Love has furnished none.  More importantly, when this court grants the City's motion for summary judgment against Love as to the federal claims, as it will do, the court will, as it usually does, decline to exercise jurisdiction over pendent state claims, even if they may be viable state law claims.

    An order consistent with the foregoing will be separately entered.

DONE this \_\_\_29th\_\_\_ day of October, 2004.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE